IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 08-cv-02053-LTB

ROBERT E. HOLZBERLEIN,

    Plaintiff,

v.

OM FINANCIAL LIFE INSURANCE COMPANY,

    Defendant and Third-Party Plaintiff,

v.

RICHARD HOLZBERLEIN,
CAROL FISCHBACH, and
TIMOTHY HOLZBERLEIN,

    Third-Party Defendants.
_____

**ORDER**
_____

This annuity beneficiary dispute is before me on Plaintiff, Robert E. Holzberlein's, Motion for Partial Summary Judgment [**Docket # 37**]; Defendant, OM Financial Life Insurance Company's ("Defendant"), Response [**Docket # 41**]; and Plaintiff's Reply [**Docket # 43**]. Oral argument would not materially assist the determination of this motion. After consideration of the motion, the papers, and the case file, and for the reasons stated below, I DENY Plaintiff's Motion for Partial Summary Judgment [**Docket # 37**].

**I.  BACKGROUND**

The following facts are alleged. In 2003, Mary Holzberlein ("Decedent") purchased three annuity certificates from Defendant, naming the three third-party defendants as equal

primary beneficiaries of each annuity. On June 23, 2005, Decedent sent Defendant three written requests ("change-of-beneficiary forms") purporting to add Plaintiff as a beneficiary of each annuity, and modifying the share of the three existing beneficiaries such that each of the beneficiaries—then totaling four in number—would receive an equal share. Defendant found the change-of-beneficiary forms improperly executed, and therefore sent a letter to Decedent on June 28, 2005, requesting the forms be returned with proper designations and signatures. Decedent never returned the forms in the format requested by Defendant.

Decedent died on January 27, 2007. Defendant received benefits claims from the three third-party defendants and paid each a one-third share of the annuity funds on or before July 13, 2007. On September 12, 2008, Defendant received a claim from Plaintiff for one-fourth of the annuity funds. Defendant denied Plaintiff's claim, and Plaintiff brought the present complaint seeking to enforce his claim to one-fourth of the annuity proceeds. On October 30, 2008, Defendant filed a counterclaim against Plaintiff seeking a declaration from this Court stating the proper beneficiaries of the annuity funds; and—should the Court determine Plaintiff was also entitled to a share of the annuity funds—a third-party complaint against the three beneficiaries already paid for unjust enrichment.

Plaintiff now moves for summary judgment on the basis that Decedent—by filing the change-of-beneficiary forms—expressed her unambiguous intent to add Plaintiff as a primary beneficiary of the annuities.

## II. STANDARDS OF REVIEW

### A. Contract Interpretation

As the annuity agreement at issue in this dispute arises under Colorado law, I first look to

rulings of the Colorado Supreme Court to aid my analysis. *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 899 (10th Cir. 2006). If no applicable rulings exist, I must endeavor to predict how the Colorado Supreme Court would rule. *Id*. In such circumstances, I must follow any intermediate state court decision unless other authority demonstrates the Colorado Supreme Court would decide otherwise. *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574 (10th Cir. 1984). The policies underlying the applicable legal doctrines, the doctrinal trends indicated by these policies, and the decisions of other courts may also inform my analysis. *Id*. at 1574–75.

Under Colorado law, an insurance agreement is a contract and should be construed in accordance with principles of contract law. *See Theriot v. Colo. Ass'n of Soil Conservation Dists. Med. Benefit Plan*, 38 F. Supp. 2d 870, 876 (D. Colo. 1999). The primary goal of contract interpretation is to determine and give effect to the intent of the parties. *See id.* The intent of the parties "is found by examination of the entire instrument and not by viewing clauses or phrases in isolation. Each word in an instrument is to be given meaning if at all possible." *U.S. Fid. & Guar. Co. v. Budget Rent-A-Car Sys., Inc.*, 842 P.2d 208, 213 (Colo. 1992).

In order to determine the intent of the parties, a court will first inquire whether the contract is ambiguous. *See Stegall v. Little Johnson Assocs., Ltd.*, 996 F.2d 1043, 1048 (10th Cir. 1993). "Under Colorado law, to determine if a particular term is ambiguous, 'the language of the agreement must be construed by application of the accepted meaning of the words with reference to all of its provisions. The nature of the transaction which forms the contract subject matter must also be considered.'" *Id.* (quoting *In re Marriage of Thomason*, 802 P.2d 1189, 1190 (Colo. Ct. App. 1990)). Where the text of the agreement reasonably allows for varying interpretations, it is ambiguous. *See Theriot*, 38 F. Supp. 2d at 877.

3

The determination of whether a contract is ambiguous is a question of law for the court. *See Stegall*, 996 F.2d at 1048. If a court determines the meaning of a contract is free of ambiguity, it will enforce the contract according to its plain language. *See Theriot*, 38 F. Supp. 2d at 876. Interpretation of unambiguous contract terms is also a question of law for the court. *See id*. If, however, "the court determines that a contract is ambiguous and its construction depends on extrinsic evidence, then the interpretation of the contract becomes a question of fact." *See Stegall*, 996 F.2d at 1048.

## B. Summary Judgment

Although Plaintiff's motion seeks summary judgment on the basis of both questions of law and questions of fact, the standard of review normally applied to summary judgment motions applies. *See Flannery v. Allstate Ins. Co.*, 49 F. Supp. 2d 1223, 1224 (D. Colo. 1999). The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is not proper if—viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor—a reasonable jury could return a verdict for the non-moving party. *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).

In a motion for summary judgment, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue

4

of material fact." *Celotex*, *supra*, 477 U.S. at 323 (quoting FED. R. CIV. P. 56(c)). If this burden is met, then the non-moving party has the burden of showing there are genuine issues of material fact to be determined. *See id.* at 322. It is not enough that the evidence be merely colorable; the non-moving party must come forward with specific facts showing a genuine issue for trial. *See id.*; *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). I shall grant summary judgment, therefore, only if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 420 (10th Cir. 1990); FED. R. CIV. P. 56(c).

In a motion for summary judgment, I view the evidence "through the prism of the substantive evidentiary burden." *Liberty Lobby*, *supra*, 477 U.S. at 254. The inquiry is based on "the quality and quantity of evidence required by the governing law" and "the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant." *Id*. Accordingly, in this insurance annuity case, Defendant must show material facts in dispute by a preponderance of the evidence in order to defeat Plaintiff's motion for summary judgment. *See*, *e.g.*, COLO. JURY INSTR., CIVIL 3:1 (2006) ("To prove something by a 'preponderance of the evidence' means to prove that it is more probably true than not.").

### III. ANALYSIS

It is not disputed that Plaintiff was not an original beneficiary of the annuities. Accordingly, the question here is whether the change-of-beneficiary forms submitted by

5

Decedent on June 23, 2005, altered the terms of the annuities such that Plaintiff was a beneficiary at the time of Decedent's death. This inquiry requires resolution of two questions: (1) whether the change-of-beneficiary forms, as submitted, unambiguously altered the terms of the annuities; and (2) if the answer to the first inquiry is "yes," whether the terms were altered in a manner that is itself unambiguous. If the answer to the second inquiry is also "yes," I must enforce the contract according to the plain meaning of its unambiguous terms. *See Theriot*, 38 F. Supp. 2d at 876. If I find ambiguity exists as to either issue, however, I may consider extrinsic evidence to resolve the factual question of Decedent's intent. *See Dorman*, 914 P.2d at 911–12.

<u>A. Whether the Annuity Agreement is Ambiguous</u>

*1. Whether the change-of-beneficiary forms, as submitted,*

*unambiguously altered the terms of the annuities*

Under the identical terms of all three annuity agreements, the "beneficiary" is the person or persons "named in the application or in the most recent beneficiary change sent to our home office." *See* Annuity Applications [**Docket ## 37-2, 37-3, 37-4**]. The "definitions" section defines "beneficiary" as: "The person last named by the Owner or his or her designee to receive the proceeds upon the death of the Owner." *See* Annuity Agreement Policies [**Docket # 37-5**]. The beneficiary may be changed by "written request," which is defined as: "A request written to us and received by us on a form satisfactory to us." [**Docket # 37-5**].

On June 27, 2005, Defendant received three "Transfer of Ownership/Change of Beneficiary/Change of Annuitant" forms from Decedent. [**Docket ## 40-3, 40-4, 40-5**]. The forms were preprinted by Defendant for that purpose. It cannot be disputed that Decedent—by using the form specifically provided by Defendant for the purpose of designating a change of

beneficiary—submitted a written request on a form satisfactory to Defendant. Decedent clearly stated her intent to add Plaintiff as a beneficiary of each annuity. As there appears to be no ambiguity regarding the steps necessary to effectuate a change in the policy terms, and no ambiguity as to Decedent's compliance with those steps, I conclude Decedent altered the terms of the annuities to include Plaintiff as a beneficiary. *See ITT Life Ins. Corp. v. Damm*, 567 P.2d 809, 810–11 (Colo. Ct. App. 1977) (holding where an insured substantially complies with the terms of a contract of insurance regarding a change in beneficiaries, the change is effective as of the date of the written notice).

*2. Whether the terms were altered in a manner that is itself unambiguous*

Having determined that Decedent unambiguously altered the terms of the annuities, I now turn to the question whether the terms of the annuities, as altered, are themselves unambiguous. Prior to Decedent submitting the change-of-beneficiary forms, the third-party defendants were each named as a "primary beneficiary." Despite having such a designation available, no person was named a "contingent beneficiary." On the change-of-beneficiary forms, spaces were provided for changing beneficiaries under either category.

On the change-of-beneficiary forms—despite having the choice of writing the names in the space indicated for "primary beneficiary"—Decedent hand-wrote the names "Richard A. Holzberlein," "Robert E. Holzberlein," "Carol L. Fischbach," and "Timothy D. Holzberlein" immediately above and below the line marked "Contingent Beneficiary." Decedent wrote no names in the spaces marked "Primary Beneficiary." When an insured is presented with multiple "fill-in-the-blank" options on an insurance contract, filling in the blank on a given option demonstrates the insured contemplated the choices and chose between the available options.

7

*See, e.g., Hatfield v. Liberty Mut. Ins. Co.*, 98 F. App'x 789, 795–96 (10th Cir. 2004); *Gilbert v. United Fire & Cas. Co.*, No. 07-cv-00471-LTB, 2007 WL 3274428, at *4 (D. Colo. Nov. 5, 2007); *S. Gen. Ins. Co. v. Mathis*, 360 S.E.2d 19, 22 (Ga. Ct. App. 1987); *Oakland Neurosurgical Arts, P.C. v. Blue Cross and Blue Shield of Mich.*, 356 N.W.2d 267, 270 (Mich. Ct. App. 1984). Accordingly, had Decedent simply written the names of her four children in the blank marked "contingent beneficiary"—without more—her intent in modifying the annuity would be unambiguous.

In addition to writing the names of her four children in the space marked "contingent beneficiary," however, on two of the forms, Decedent wrote: "Just Adding: Robert Holzberlein." [**Docket ## 40-3, 40-4**]. On the third form, Decedent wrote: "Adding: Robert Holzberlein." [**Docket # 40-5**]. As noted by Defendant—by redesignating the three original primary beneficiaries as contingent beneficiaries—Decedent was not simply, and unambiguously, "adding" Plaintiff Robert Holzberlein as a beneficiary. Construing the "adding" language together with the redesignation of primary beneficiaries as contingent beneficiaries instead leads to at least three possible intended outcomes: (1) Decedent actually meant to add Plaintiff as a primary beneficiary without changing the status of the other primary beneficiaries, but mistakenly wrote the names of the four intended primary beneficiaries in the space marked for contingent beneficiaries; (2) Decedent actually meant to convert the original primary beneficiaries to contingent beneficiaries and add Plaintiff as an additional contingent beneficiary; or (3) Decedent actually meant to add Plaintiff as a contingent beneficiary and did not mean to convert the original primary beneficiaries into contingent beneficiaries.

Plaintiff argues the Court should disregard the preprinted "Contingent Beneficiary"

8

language on the change-of-beneficiary forms under a rule of Colorado law that holds when handwritten or typed provisions in a contract cannot be reconciled with preprinted provisions, the handwritten or typed provisions prevail. *See Nicklis v. Nakano*, 195 P.2d 723, 724–25 (Colo. 1948). The rule is narrowly applied, however, only to those circumstances in which it is not possible to construe the handwritten and preprinted terms together. *See U.S. Fid. & Guar. Co.*, 842 P.2d at 213. As noted above, the handwritten and preprinted language in the change-of-beneficiary forms is not irreconcilable. Indeed, it lends itself to at least three reasonable interpretations—only one of which suggest Decedent mistakenly wrote Plaintiff's name on the line marked "Contingent Beneficiary." Accordingly—as the construction of the "adding" language together with the redesignation of primary beneficiaries as contingent beneficiaries reasonably allows for varying interpretations—Decedent's intent is ambiguous as a matter of law. *See Theriot*, 38 F. Supp. 2d at 877.

B. Whether Extrinsic Evidence Shows Plaintiff's Interpretation of the Ambiguous Terms to be the Only Reasonable Interpretation

When a court determines a contract to be ambiguous, "the ambiguity . . . standing alone, presents a disputed issue of material fact." *Anderson v. Eby*, 998 F.2d 858, 865–66 (10th Cir. 1993). In order to prevail on summary judgment in such circumstances, the moving party must support its motion with extrinsic evidence which shows—when read in context with the surrounding circumstances and when construed in the manner most favorable to the nonmoving party—the moving party's interpretation of the ambiguous terms is the only reasonable interpretation. *See Celotex*, 477 U.S. at 323; *Anderson*, 998 F.2d at 866; *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 911–12 (Colo. 1996).

9

Plaintiff refers me to certain documents prepared by Defendant in connection with the annuities and the change-of-beneficiary forms that indicate Defendant at one point considered the change-of-beneficiary forms adequate to add Plaintiff as a primary beneficiary. *See* Title Trace Worksheets [**Docket ## 37-10, 37-11, 37-12**]. Whatever relevance these documents may have to other aspects of this case, the documents have no relevancy here where the inquiry is focused only on Decedent's intent. As Plaintiff does not submit extrinsic evidence of Decedent's intent, summary judgment in Plaintiff's favor is inappropriate.

## IV.  CONCLUSION

Accordingly, Plaintiff's Motion for Partial Summary Judgment [**Docket # 37**] is DENIED.


Dated: March  4 , 2009.

BY THE COURT:

  s/Lewis T. Babcock
Lewis T. Babcock, Judge